# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**THOMAS M. TULLY,**

      Petitioner,

v.                                                                  Civil Action No. **3:10CV299**

**GENE JOHNSON,**

      Respondent.

## MEMORANDUM OPINION

Thomas M. Tully ("Tully"), a Virginia prisoner, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the County of Frederick ("Circuit Court") for breaking and entering with intent to commit assault and battery, malicious wounding, misdemeanor assault and battery, and two counts of maliciously causing bodily injury by caustic substance. Respondent has moved to dismiss. Tully has responded and moved to amend his initial response to the Respondent's motion to dismiss. Tully's motion to amend his response (Docket No. 24) will be GRANTED. The matter is ripe for disposition. Jurisdiction is appropriate under 28 U.S.C. § 2254.

### I. Summary of Tully's Claims and Respondent's Arguments

Tully contends that he is entitled to relief because he was denied the effective assistance of counsel. Tully contends that he is entitled to relief upon the following grounds:[1]

Claim A      In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Articl[e] I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to request that the judge have the testimony of the preliminary hearing reduced to writing. (§ 2254 Pet. 10.)

---

[1] The Court has corrected the capitalization in the quotations to Tully's submissions.

Claim B    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue, and file a motion to dismiss all of the criminal indictments because they are barred under the Double Jeopardy Clause doctrine of res judicata, because of the prosecution of the protective order. (§ 2254 Pet. 11.)

Claim C    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue, and file a motion to dismiss Indictments CR06-440 & 646, because jeopardy had already attached to the warrant of arrest, which barred the Circuit Court's jurisdiction under the Double Jeopardy Clause. (§ 2254 Pet. 13.)

Claim D    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue and file a motion to dismiss Indictments CR06-439, 440, 645, & 646 because the Commonwealth was improperly using multiple punishments for the same set of facts, same occurrence, TT.77-78, in violation of the United States Constitution Double Jeopardy Clause. (§ 2254 Pet. 15.)

Claim E    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue and file a motion to dismiss all of the malicious bodily injury charges, as being barred by the pretrial ruling, TTs. 217-219, under the doctrine of res judicata. (§ 2254 Pet. 17.)

Claim F    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue and file a motion to dismiss all indictments because the Circuit Court was without jurisdiction of the defendant, as a result of prosecutorial misconduct because the Commonwealth obtained custody of the defendant by improper means, in violation of the Interstate Agreement on Detainers Act §53.1-210 Code of Virginia (1950, as amended), and due process of the law. (§ 2254 Pet. 19.)

Claim G    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to[]conduct

2

a thorough investigation of facts surrounding the charges and possible defenses. (§ 2254 Pet. 21.)

Claim H    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to present favorable defense evidence at trial, including:

[1]    Evidence from the Winchester Medical Center pertaining to the emergency room examination of Lisa Hoskins. See Petitioner's Exhibit 33.

[2]    Evidence from the Winchester Medical Center pertaining to the emergency room examination of Co[u]rtney Tully. See Petitioner's Exhibit 34.

[3]    Evidence from the Northwestern Regional Adult Detention Center pertaining to telephone conversations between the defendant and Lisa Hoskins from the time period of March 5, 2006 until May 3, 2006. (§ 2254 Pet. 23.)

Claim I    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, and argue that the Commonwealth violated the defendant's 4th, 5th, and 14th Amendments by improperly obtaining the defendant's telephone records without a court ordered search warrant and then improperly manufacturing evidence in the form an alleged confession, with these telephone recordings. (§ 2254 Pet. 28.)

Claim J    In violation of the 5th, 6th, and 14th Amendments to the Un[it]ed States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, and argue that under the doctrine of transferred intent, the defendant could only be guilty of one misdemeanor charge: assault and battery. (§ 2254 Pet. 31.)

Claim K    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, and argue that the Commonwealth improperly manufactured evidence in violation of the defendant's 14th Amendment right, which resulted in the defendant being falsely convicted and sentenced. (§ 2254 Pet. 33.)

Claim L    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object,

3

raise, argue and file a motion for mistrial, based on prosecutorial misconduct, when the Commonwealth used cross-examination to improperly question the defendant. (§ 2254 Pet. 38.)

Claim M    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue and file a motion to dismiss Indictments CR06-645 & 646, as being improperly obtained because the Commonwealth testified before the grand jury and used it's [sic] influence to obtain them, and the Commonwealth denied the defendant his 6th Amendment right to confront the witness that testified for these indictments. (§ 2254 Pet. 40.)

Claim N    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel when counsel failed to object, raise, argue and move the court for a mistrial, based on prosecutorial misconduct, due to the highly prejudicial and inflammatory statements of the Commonwealth during opening statements and closing argument. (§ 2254 Pet. 42.)

Claim O    In violation of the 5th, 6th, and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied effective assistance of counsel as a result of any and all of counsel's errors in claims A to N, and prejudice must be viewed in aggregate within the totality of the circumstances. (§ 2254 Pet. 45.)

Respondent contends that all of the foregoing claims are procedurally barred from review pursuant to section 8.01-654(B)(2) of the Virginia Code because Tully failed to raise such claims in his first state petition for a writ of habeas corpus.[2]

## II. Procedural History

### A.    Direct Appeal

Following his convictions in the Circuit Court, Tully, by counsel, pursued an appeal to the Court of Appeals of Virginia. On this appeal, Tully raised twenty-six different claims of

---

[2] Section 8.01-654(B)(2) of the Virginia Code generally bars an inmate from raising in a subsequent habeas petition any claim that he could have raised in a prior habeas petition. *See* Va. Code Ann. 8.01-654(B)(2) (West 2010).

errors. On March 13, 2008, the Court of Appeals of Virginia denied in part and dismissed in part Tully's appeal. *Tully v. Commonwealth*, No. 1338-07-4 (Va. Ct. App. Mar. 13, 2008.) Tully requested further review by a three-judge panel of the Court of Appeals of Virginia. Thereafter, on July 3, 2008, a three-judge panel of the Court of Appeals of Virginia denied Tully's petition for appeal. *Tully v. Commonwealth*, No. 1338-07-04 (Va. Ct. App. July 3, 2008). The Court of Appeals of Virginia rejected a number of Tully's claims because Tully had not complied with Supreme Court of Virginia Rules 5A:12(c),[3] 5A:18,[4] 5A:20(c), and 5A:20(e).[5] *Id.* at 1-12. Thereafter, Tully filed a petition for appeal with the Supreme Court of Virginia. On January 15, 2009, in a summary order, the Supreme Court of Virginia refused Tully's petition for appeal. *Tully v. Commonwealth*, No. 081493 (Va. Jan. 15, 2009).

---

[3] "The provisions of Rule 5A:18 shall apply to limit those questions which the Court of Appeals will rule upon on appeal." Va. Sup. Ct. Rule 5A:12(c) (West 2008).

[4] "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Va. Sup. Ct. Rule 5A:18 (West 2008).

[5] These rules provided in pertinent part that:

> The opening brief of appellant shall contain:
>
> . . . .
>
> (c) A statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court.
>
> . . . .
>
> (e) The principles of law, the argument, and the authorities relating to each such question presented. Where the question was not preserved in the trial court, counsel shall state why the good cause and/or ends of justice exceptions to Rule 5A:18 are applicable. With respect to each question, the principles, the argument, and the authorities shall be stated in one place and not scattered through the brief.

Va. Sup. Ct. Rule 5A:20 (West 2008).

## B.  First State Habeas Petition

On March 3, 2009, Tully filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. In that petition, Tully claimed that he was entitled to relief because "Petitioner's right to effective assistance of counsel, under the Sixth Amendment to the United States Constitution, was violated when appellate counsel failed to properly perfect the petitioner's appeal to the Virginia Court of Appeals." (Pet. Writ Habeas Corpus at 5, *Tully v. Dir., Dep't of Corr.*, No. 090386 (Va. Oct. 2, 2009) ("Pet'r's First State Pet."). In that petition, Tully complained that he had been denied effective assistance by appellate counsel because appellate counsel had not complied with Rules 5A:12(c), 5A:18, 5A:20(c), and 5A:20(e) of the Rules of the Supreme Court of Virginia. (Pet'r's First State Pet. at 5.) Tully requested the opportunity to file a "belated appeal." (Pet'r's First State Pet. at 6.)

On October 2, 2009, the Supreme Court of Virginia denied Tully's petition for a writ of habeas corpus. *Tully v. Dir., Dep't of Corr.*, No. 090386 (Va. Oct. 2, 2009). The Supreme Court of Virginia concluded:

> The Court holds that this claim fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the pleadings filed in the Court of Appeals of Virginia, demonstrates that counsel did perfect the appeal, and that some of the issues were considered on the merits. Therefore, petitioner is not entitled to a belated appeal. As to the issues that were allegedly dismissed, petitioner fails to proffer what arguments counsel should have made in support of those issues or allege that the issues, if properly preserved, would have been meritorious. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Id.* at 2.

## C.     Second State Habeas Petition

On December 10, 2009, Tully filed a second petition for a writ of habeas corpus with the

Supreme Court of Virginia. In that petition, Tully raised Claims A through O which are recited

above. *See supra* Part I. On February 9, 2010, the Supreme Court dismissed Tully's second

petition for a writ of habeas corpus because "no writ shall be granted on the basis of any

allegation the facts of which the petitioner had knowledge at the time of filing any previous

petition." *Tully v. Dir., Dep't of Corr.*, No. 092482, at 1 (Va. Feb. 9, 2010) (*citing* Va. Code

8.01-654(B)(2)). Thereafter, Tully filed his present 28 U.S.C. § 2254 petition.

### III.  Procedural Default

The doctrine of procedural default provides that "[i]f a state court clearly and expressly

bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural

rule provides an independent and adequate ground for the dismissal, the habeas petitioner has

procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir.

1998) (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).[6] "In general, a violation of

'firmly established and regularly followed state rules' will be adequate to foreclose review."

*Hedrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006) (*quoting Lee v. Kemna*, 534 U.S. 362, 375

(2002)). The burden of pleading and proving that a claim is procedurally defaulted rests with the

state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a

---

[6] A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (*citing Coleman*, 501 U.S. at 735 n.1). Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

### A.  Section 8.01-654(B)(2) Constitutes an Adequate and Independent Procedural Bar

Here, the Supreme Court of Virginia found that Claims A through O were barred by Virginia's rule against successive habeas petitions found in section 8.01-654(B)(2) of the Virginia Code. That rule provides:

> [A] petition [for a writ of habeas corpus] shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition. *The provisions of this section shall not apply to a petitioner's first petition for a writ of habeas corpus when the sole allegation of such petition is that the petitioner was deprived of the right to pursue an appeal from a final judgment of conviction* or probation revocation, except that such petition shall contain all facts pertinent to the denial of appeal that are known to the petitioner at the time of the filing, and such petition shall certify that the petitioner has filed no prior habeas corpus petitions attacking the conviction or probation revocation.

Va. Code Ann. § 8.01-654(B)(2) (West 2010) (emphasis added). The Supreme Court of Virginia has explained that the emphasized language "allow[s] a petitioner to file a second or subsequent petition raising new claims when his first petition contained only an allegation that he was denied the right to pursue a direct appeal." *Davis v. Johnson*, 652 S.E.2d 114, 117 n.* (Va. 2007). Tully's first state habeas petition was not limited to the allegation that he was denied the right to appeal his conviction, *see, e.g., Robinson v. Warden*, No. 1:08cv1077 (CMH/TCB), 2010 WL 883744, at *1 (E.D. Va. Mar. 8, 2010); rather Tully asserted he was denied effective assistance of appellate counsel because, although appellate counsel pursued a direct appeal to the Supreme Court of Virginia, he did a poor job of litigating that appeal. Tully sought the opportunity to pursue a second direct appeal.

8

Section 8.01-654(B)(2) generally constitutes an adequate and independent procedural bar and thus appears to bar Tully's claims. *See George v. Angelone*, 100 F.3d 353, 363-64 (4th Cir. 1996). Nevertheless,

> [e]ven if a rule is generally sound, a petitioner may show that the state ground is not adequate where: (1) the rule is not "regularly and consistently applied by the state court to a particular type of federal constitutional claim," *Brown v. Lee*, 319 F.3d 162, 170 (4th Cir. 2003) (internal citations omitted); or (2) the rule is exorbitantly applied to the circumstances at issue.

*Hedrick*, 443 F.3d at 360 (*citing Lee*, 534 U.S. at 376). The first exception provides no refuge for Tully because Virginia regularly and consistently applies section 8.01-654(B)(2) to the sort of ineffective assistance of counsel claims he raised in his second state habeas petition. *See, e.g.*, *Mackall v. Angelone*, 131 F.3d 442, 445-46 (4th Cir. 1997).

Tully apparently suggests that he satisfies the second exception. *Lee*, 534 U.S. at 376 ("There are . . . exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." (*citing Davis v. Wechsler*, 263 U.S. 22, 24 (1923) (Holmes, J.))). In support of this argument, Tully directs the Court to the decision of the Court of Appeals of Virginia in *Jacobs v. Commonwealth*, No. 0874-02-4, 2002 Va. App. LEXIS 589 (Va. Ct. App. Oct. 8, 2002). (Pet'r's Mot. Amend Resp. Resp't's Mot. Dismiss ¶ 11 (*citing Jacobs*, 2002 Va. App. LEXIS 589)). Tully notes that, in *Jacob*, appellate counsel submitted a brief that failed to comply with Supreme Court of Virginia Rules 5A:12(c) and 5A:20(c). (Pet'r's Mot. Amend Resp. Resp't's Mot. Dismiss ¶ 11 (*citing Jacobs*, 2002 Va. App. LEXIS 589)). The Court of Appeals of Virginia responded by denying the petition for appeal and removing counsel from the list of court approved counsel. *Jacob*, 2002 Va. App. LEXIS 589, at *2-3. According to Tully, the Court of Appeals of Virginia then

9

"allowed Jacobs to resubmit another appeal, after appointing him a new attorney." (Pet'r's Mot. Amend Resp. Resp't's Mot. Dismiss ¶ 12 (*citing Jacobs v. Commonwealth*, No. 0874-02-4, 2003 WL 21524624 (Va. Ct. App. July 8, 2003)). Tully suggests his circumstances are similar to the petitioner in *Jacobs*, and he should have been provided with another opportunity to litigate his direct appeal.

There is a striking difference between the litigant in *Jacobs* and Tully. In *Jacobs*, the original appellate counsel's actions initially prevented the petitioner from receiving any ruling on the merits of his petition for appeal before the Court of Appeals of Virginia. *Jacobs*, 2002 Va. App. LEXIS 589, at *1-3. Here, the Court of Appeals of Virginia ruled on the merits of numerous grounds for relief raised by Tully on his direct appeal. Although Tully argues that he was deprived of his right to appeal by appellate counsel's omissions, the record reflects that this is simply not so. *See Sumner v. Davis*, 340 F. App'x 937, 940 (4th Cir.) (rejecting similar claim and noting that "[a]lthough counsel's error precluded direct appellate review of an aspect of [the petitioner's] insufficiency of the evidence claim, [the petitioner] did not suffer complete forfeiture of desired appellate proceedings"), *cert. denied*, 130 S. Ct. 1025 (2009).

Section 8.01-654(B)(2) of the Virginia Code is an adequate and independent procedural bar under the present circumstances. "There is nothing inherently unfair, however, about requiring that all available grounds for relief be raised in a petitioner's first [state habeas petition]." *Thomas v. Polk*, 176 F. App'x 377, 382 (4th Cir. 2006) (*citing McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). Thus, Claims A through O are procedurally defaulted and barred from review here absent a showing of cause and prejudice or actual innocence. Tully asserts that he can demonstrate cause and prejudice. Additionally, Tully vaguely asserts he is actually innocent.

## B. Tully Fails to Demonstrate Cause to Excuse His Default

"'[C]ause'" refers to "'some objective factor external to the defense [that] impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule.'" *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Tully suggests that he has cause to excuse his default "[1] due to counsel's failing to perfect the petition for appeal, and [2] the inconsistent ruling of the Virginia Supreme Court in the first [petition for a] writ of habeas corpus." (Pet'r's Mot. Amend Resp. Resp't's Mot. Dismiss ¶ 17.) Tully fails to demonstrate that either his appellate or trial counsel somehow prevented him from including all of his claims for habeas relief in his first habeas petition as required by section 8.01-654(B)(2) of the Virginia Code. *See Lee v. Johnson*, No. 2:10cv122, 2010 WL 3937334, at *4 (E.D. Va. July 28, 2010) (citing cases); *see also Mize v. Hall*, 532 F.3d 1184, 1192-93 (11th Cir. 2008) (rejecting petitioner's assertion that alleged ineffective assistance of counsel in prior proceedings constituted cause to excuse default where inmate could have raised claim in subsequent habeas), *cert. denied*, 129 S. Ct. 1629 (2009). Accordingly, Tully's first assertion of cause is rejected. With respect to his second assertion of cause, Tully does not identify any "inconsistent ruling" by the Supreme Court of Virginia. (Pet'r's Mot. Amend Resp. Resp't's Mot. Dismiss ¶ 17.) To the extent Tully suggests he was treated differently than the defendant in *Jacobs v. Commonwealth*, No. 0874-02-4, 2002 Va. App. LEXIS 589 (Va. Ct. App. Oct. 8, 2002), that assertion is rejected for the reasons stated above. *See supra* Part III.A. Moreover, "the fact that a petitioner is untrained in the law or unfamiliar with a court's procedural rules does not provide a basis for establishing cause." *Wilson v. Johnson*, No. 1:08cv794 (LMB/TRJ), 2009 WL 2243708, at *3 (E.D. Va. July 22, 2009); *see also Lee*, 2010 WL 3937334, at *4. Accordingly, the Court rejects Tully's second assertion of cause.

11

## C.    Tully Has Failed to Demonstrate that He Is Actually Innocent

"Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (additional parallel citations omitted.) Here, the Court reviews Tully's claim under the more lenient standard for gateway claims set forth in *Schlup*.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (*quoting Schlup*, 513 U.S. at 327). "[A] gateway claim requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Id.* at 537 (*quoting Schlup,* 513 U.S. at 324). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (*quoting Schlup*, 513 U.S. at 327-28). The Court then must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377-78 (4th Cir. 2010) (*quoting Schlup,* 513 U.S. at 327-28). The Court, however, "need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (*citing Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997); *Feaster v. Beshears,* 56 F. Supp. 2d 600, 610 (D. Md.1999)).

Tully's convictions for breaking an entering with intent to commit assault and battery, malicious wounding, misdemeanor assault and battery, and two counts of maliciously causing bodily injury by caustic substance arose from Tully's attack upon Lisa Hoskins and Courtney Tully ("Courtney") on March 5, 2006. Tully did not provide any coherent claim of innocence in opposition to Respondent's motion to dismiss. Rather, Tully simply asserts, "The Petitioner has shown that he [is] actually innocent of the crimes that he is accused of." (Petr's Resp. Resp't's Mot. Dismiss ¶ 29.) In conjunction with this assertion, Tully did not, as he must, direct the Court to new reliable evidence of his innocence. *Hill*, 2010 WL 5476755, at *5 (*citing Weeks*, 119 F.3d at 1352-53; *Feaster*, 56 F. Supp. 2d at 610). Nevertheless, in light of the fact that Tully is proceeding *pro se*, the Court will construe Tully to make a claim of actual innocence, with respect to his convictions for two counts of maliciously causing bodily injury by caustic substance, based on the statements in his § 2254 Petition, wherein he claims the victims' medical records and testimony "substantiate[] [his] innocence of any pepper spray assault." (§ 2254 Pet. ¶ 114; *see also* Pet'r's Resp. Resp't's Omnibus Resp. 6 (Docket No. 36). )[7]

---

[7] In his most recent submission, Tully also suggests that he is actually innocent because pretrial rulings by Judge Sharp and Judge Prosser "exonerated" him. (Pet'r's Resp. Resp't's Omnibus Resp. ¶ 19.) The actual innocence exception is concerned with claims of "factual innocence" as opposed to legal innocence. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998). Tully's arguments regarding the effect the pretrial rulings of the state court judges do not constitute new reliable evidence of his factual innocence which would excuse his procedural defaults. *See Harvey v. Jones*, 179 F. App'x 294, 298-99 (6th Cir. 2006); *Pitts v. Norris*, 85 F.3d 348, 351 (8th Cir. 1996). Accordingly, these arguments will receive no further consideration from the Court.

### 1.    Hoskins's Testimony

Lisa Hoskins testified that she had two children with Tully: Courtney and Channing Tully. On March 5, 2006, she lived in a trailer park in Frederick County, Virginia. Hoskins had ended her romantic involvement with Tully in November of 2005. At that point, Hoskins took back Tully's key to her trailer, and Tully's mother removed Tully's personal items from Hoskins's trailer.[8]

After Hoskins ended her relationship with Tully, she became romantically involved with Gary Snoby, who worked with Tully. On Friday, March 3, 2006, Tully began calling Hoskins. Hoskins received roughly twenty phone calls from Tully between Friday, March 3, 2006 and Sunday, March 5, 2006. Tully had found out that Hoskins was seeing Snoby and Tully was angry.

On Sunday, March 5, 2006, at 7:00 a.m., Hoskins was awakened by Tully pounding on and kicking the door to her trailer. Hoskins called 911. Tully broke the window in Hoskins's trailer and began to crawl through the window of the trailer. Hoskins fled to a neighboring trailer owned by Scott Baldwin and asked to be let in. Tully appeared behind Hoskins, pushed her to the ground, and kicked her three or four times.[9] Hoskins begged Tully to stop. Hoskins's thirteen-year old daughter Courtney placed her body on top of Hoskins to prevent Tully from kicking Hoskins. Tully asked Hoskins, "'Why did you do this to me, Lisa?'" (Tr. at 331.) Tully then sprayed Hoskins in the face with some substance. Hoskins testified the spray hurt very badly. Tully also dragged Hoskins around by her hair.

---

[8] The prosecution introduced this evidence to support the breaking and entering charge and demonstrate that Tully did not have permission to be inside Hoskins's trailer.

[9] Hoskins was five feet and one inch tall and weighed 110 pounds. (Tr. at 321.) Tully was six feet and two inches tall and weighed 180 pounds. (Tr. at 715.)

At this point, the police arrived. Hoskins talked to police and then went into her trailer to rinse her eyes. An ambulance took Hoskins to the hospital. Hoskins testified that the pain in her back lasted approximately six weeks. Hoskins swore that she did not have a weapon or fight back. Hoskins swore that when she arrived at the hospital, the back of her head was very sore, and handfuls of her hair fell out when she ran her hand through her hair. Immediately prior to this incident, hair had not come so easily detached from her head. The prosecution introduced into evidence a picture of Hoskins's head, which showed a missing patch of hair. Additionally, the prosecution produced a handful of Hoskins's hair that had come detached from her head on the date of the assault.

### 2. Courtney's Testimony

Courtney testified that Tully had been "officially kicked out" of the trailer around November and/or December of 2005. (Tr. at 426.) Courtney confirmed that the majority of Tully's personal items had been removed from the trailer. Courtney testified Tully banged on the door, then broke out the window and chased her and her mom through the house to the neighbor's home. Upon arriving at the neighbor's home, Tully pushed Hoskins off the porch and into the yard. Tully then began kicking Hoskins "really hard" as she lay in the yard. (Tr. at 431.) Courtney tried to cover her mom with her body. Tully then sprayed Courtney and her mom with mace or some other substance. After Tully got Courtney off of her mom, Tully pulled Hoskins's hair.

After the incident, Courtney's eyes, neck, and finger hurt. When the police arrived, Courtney told them what happened and washed her eyes. Courtney went to the hospital where medical personnel put a wash cloth on her neck and shampoo on the burning on her neck. The

Commonwealth introduced a picture of Courtney from after the attack. In the picture, her eyes are red and there is a red substance on her shirt. Courtney testified that her mother did not have a knife and never fought back.

### 3. Candace Creswell's Testimony

Candace Creswell was at Hoskins's trailer when Tully arrived and began kicking the door. Creswell testified that she saw Tully in the trailer after the window broke. Creswell testified that after she, Hoskins, and Courtney fled to the nearby trailer, Tully caught Hoskins and threw her down. Creswell testified that Tully then dragged Hoskins by her hair through the grass and repeatedly kicked her really hard.

### 4. The Baldwins' Testimony

Scott Baldwin, the owner of the trailer to which Hoskins fled, confirmed the above accounts. Scott Baldwin testified that he observed Tully repeatedly kicking Hoskins and Courtney very hard. Hoskins was not fighting back.

Brandon Baldwin, Scott Baldwin's son, also observed the incident. Brandon testified that he saw Tully repeatedly kick Hoskins and Courtney "like a football" as they were on the ground. (Tr. at 480.) Brandon also testified that he saw Tully spray Courtney and Hoskins with mace in their eyes from about a foot away.

### 5. Other Testimony and Evidence

When Sergeant Tokash of Frederick County Police arrived on the scene, Hoskins and Courtney ran towards him crying. Hoskins's face was really red. Courtney said her face was "burning." (Tr. at 518.) Sergeant Tokash took pictures of Hoskins and Courtney which were admitted into evidence. Sergeant Tokash also recovered a can of pepper spray from Scott

16

Baldwin's property. Scott Baldwin testified that the pepper spray had not been on his property before this incident.

Carol O'Neil, a forensic toxicologist, testified that pepper spray, like that recovered from the scene, was a caustic substance that can cause a burning sensation.

The prosecution also played recordings of phone calls Tully made from jail wherein he admitted that he slammed Hoskins to the ground and kicked her a couple of times.

### 6. The Defense's Evidence

The defense's evidence essentially consisted of Tully's mother claiming that he still lived at Hoskins's residence and Tully's own testimony.

Tully testified that he still lived with Hoskins in March of 2006. Nevertheless, because he had been out drinking on March 4, 2006, he spent the night at a friend's house. When he woke up the next morning, he stopped by the trailer he shared with Hoskins to pick up some of his tools. Tully claimed he used his key to open the door to the trailer. Tully testified that Hoskins had gotten mad when she saw him and started yelling at him and cut him with a knife on his hand. Tully claims he was going to leave with his tools, but Hoskins kept yelling at him. Tully then went over to Hoskins, who was now on the Baldwin's porch, and tried to calm her down. Tully claims he only pushed Hoskins down when she came at him. When Courtney tried to intervene in the argument between Tully and Hoskins, Tully pushed Courtney down. Tully denied kicking Hoskins, breaking the window, or possessing pepper spray.

Tully's testimony simply was not credible. Tully could not produce a key for Hoskins's trailer.[10] Moreover, Tully's testimony was largely inconsistent with the story he had provided Sergeant Tokash on March 5, 2006. Tully had told Sergeant Tokash that he had been at Hoskins's trailer to deliver a check for child support. Tully also had admitted to Sergeant Tokash that he broke the trailer window. Moreover, although Tully denied that he kicked Hoskins, Tully was unable to provide a plausible explanation for the recorded conversations which reflected him saying that he had kicked Hoskins.

Additionally, on rebuttal, the prosecution called two witnesses who further refuted Tully's suggestion that he resided at Hoskins's trailer in March of 2006. Officer Tim Shraff of the Winchester Police Department testified that on February 14, 2006, Tully had told him that he lived at "116, Number Two, Monmouth Street Winchester, Virginia." (Tr. at 806.) Additionally, Christina Laws testified that, on February 15, 2006, Tully had told her that he lived at 116 East Monmouth Street in Winchester with Deanna White.

### 7. Tully's New Evidence of Innocence

Tully claims, "The evidence of the Emergency Room examination would have shown that the alleged victim[s'] eyes were *never* sprayed with or affected by any caustic substance." (§ 2254 Pet. ¶ 113.) Tully then directs the Court to the emergency room records for Hoskins and Courtney. (§ 2254 Pet. Ex. 33, 34.) Tully notes that the records do not indicate Hoskins or Courtney complained of eye problems and that Courtney specifically denied any problems besides an injured finger and redness on her forearm. Given the overwhelming evidence of

---

[10] Tully claimed that his mom had given the key back to Hoskins after he was arrested.

Tully's guilt, these medical records fall far short of demonstrating his innocence.[11] Hoskins and Courtney's testimony that Tully sprayed them with a caustic substance was confirmed by Brandon Baldwin and Candace Creswell. Additionally, this testimony was corroborated by the pictures of Courtney and the discovery of a can of pepper spray at the scene. The absence of any notation in the medical records reflecting that Courtney or Hoskins complained about eye problems is explained by the fact they had rinsed their eyes prior to being transported to hospital. Moreover, Courtney's medical records reflect that Courtney complained that she was "pepper spray[ed]" and "now has rash." (§ 2254 Pet. Ex. 34 at 1.) Tully fails to demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'" on the two counts of maliciously causing bodily injury by caustic substance. *House*, 547 U.S. at 536-37 (*quoting Schlup*, 513 U.S. at 327). Accordingly, Tully's suggestion that actual innocence excuses his default is rejected.

### IV. Tully's Request For DNA Analysis

Tully has submitted a "MOTION FOR DNA ANALYSIS OF PREVIOUSLY UNTESTED BIOLOGICAL EVIDENCE." (Docket No. 27.) In his motion, Tully requests that the Court subject to DNA testing the clump of hair the prosecution introduced into evidence to ascertain whether the hair came from Hoskins's head as alleged by the prosecution.

---

[11] The Court notes the evidence of Tully's guilt with respect to all of the charges was overwhelming.

Tully must demonstrate good cause before he is allowed to conduct discovery. *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1073 (2010). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief," if the facts are fully developed. *Id. (citing Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). Given the weight of the evidence against Tully and the relative unimportance of the clump of hair in the prosecution's case, Tully fails to demonstrate that he would be entitled to habeas relief even if DNA testing somehow eliminated Hoskins as the source of the hair the prosecution introduced into evidence. Accordingly, Tully's "MOTION FOR DNA ANALYSIS OF PREVIOUSLY UNTESTED BIOLOGICAL EVIDENCE" (Docket No. 27) will be DENIED.

## V. Conclusion

Because Tully fails to demonstrate any basis for excusing his default, his claims will be DISMISSED. Respondent's motion to dismiss (Docket No. 12) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. Tully's motion for mandamus relief, which seeks an expedited ruling on his petition for a writ of habeas corpus (Docket No. 29) will be DENIED AS MOOT. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

No law or evidence suggests that Petitioner is entitled to further consideration in this matter. A certificate of appealability will be DENIED.

An appropriate Order shall issue.

/s/
_____
James R. Spencer
Chief United States District Judge

Date: 2-22-11
Richmond, Virginia